**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| L.M.P., | Case No. 1:26-cv-04673-JLT-EGC |
| Petitioner, | ORDER DENYING THE PETITION FOR HABEAS CORPUS; DENYING PETITIONER'S REQUEST FOR TEMPORARY RESTRAINING ORDER AS MOOT |
| v. | |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | (Docs. 1, 3.) |

## I.    INTRODUCTION

Before the Court is L.M.P.'s request for a temporary restraining order (Doc. 3), filed in conjunction with her petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging her ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting that Petitioner remains mandatorily detained under 8 U.S.C. § 1231 pending adjudication of her motion to reopen. (Doc. 8.) Having carefully considered the parties' submissions, and for the reasons set forth below, the Court **DENIES** the petition for writ of habeas corpus.

## II.    FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a 58-year-old citizen of El Salvador who entered the United States without authorization in or around March 2005. (Doc. 1 at 6, ¶ 25.) Petitioner alleges to have provided border officials with an address of a family member in Texas where she planned to reside. (*Id*.)

Neither Petitioner nor her family recall ever receiving any notification in the mail requiring Petitioner to present herself before an immigration court. (*Id*.) Petitioner eventually settled in the San Francisco Bay Area where she worked and grew her family. (*Id*. at 7, ¶ 27.) She has no criminal record and is an active member of her church, often organizing fundraisers to benefit her congregation. (*Id*.)

On July 6, 2006, an immigration judge ordered Petitioner removed *in absentia.* (Doc. 1 at 7, ¶ 26.) In or around 2019, Petitioner filed an I-130 visa family petition based on her husband being a lawful permanent resident and applied for asylum with the United States Citizenship and Immigration Services. (Doc. 1 at 7, ¶ 30.) Despite USCIS lacking jurisdiction over her asylum case due to her *in absentia* final order of removal, USCIS processed her I-130 family visa and asylum applications and approved her for an employment authorization document. (*Id*.)

On June 11, 2026, Petitioner was awaiting to board a domestic plane to travel to her eldest grandson's high school graduation when she was apprehended by Immigration and Customs Enforcement to execute her i*n absentia* final order of removal. (Doc. 1 at 8, ¶ 32.) Petitioner alleges to have only learned of her removal order from July 6, 2005, following her rearrest. (*Id*. at ¶ 34.) On June 12, 2026, Petitioner's prior counsel filed motion to reopen and rescind the *in absentia* order of removal arguing lack of notice of the 2005 hearing. (*Id*. at ¶ 35.) A few days after the filing of the present habeas petition, the counsel in this case learned that the Immigration Court had rejected the motion due to several filing errors, Counsel refiled a duly executed motion to rescind and reopen, which remains pending.[1] (Doc. 9 at 2, n. 1.) Petitioner has been detained for approximately twenty days at the California City Detention Facility in California City, California. (Doc. 1 at 1.) Petitioner has been diagnosed with type one diabetes and high blood pressure for which she takes daily medications. (*Id*. at 7; ¶ 28.)

On June 17, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28

---

[1] By operation of statute and regulation, execution of Petitioner's removal is stayed pending adjudication of that motion. 8 U.S.C. § 1229a(b)(5)(C); 8 U.S.C. § 1003.23(b)(4)(ii). Petitioner contends that she has several avenues for relief if her case is reopened, including (1) an I-601A provisional waiver, which would allow her to obtain a lawful permanent status via her marriage to her lawful permanent resident spouse, (2) an I-130 family petition, (3) cancellation of removal, and (4) an I-589 application for asylum, withholding of removal, and relief under the Convention Against Torture with USCIS. (Doc. 1 at 8-9, ¶ 36.)

U.S.C. § 2241 and motion for TRO seeking immediate release. (Docs. 1, 3.) In her habeas petition, Petitioner does not challenge the legality of the removal order but instead argues that her detention under § 1231 is unlawful and violates the Due Process Clause of the Fifth Amendment. (Doc. 1 at 18-19.) In opposition, Respondents argue that Petitioner remains lawfully detained under 8 U.S.C. § 1231(a)(6) pending adjudication of her motion to reopen. (Doc. 8.).

### III.   LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.   DISCUSSION

#### A.  Detention Authority During the Removal Period

Both Petitioner and Respondents acknowledge that Petitioner is detained under 8 U.S.C. § 1231, which governs detention procedures for individuals subject to final orders of removal. (Doc. 8 at 1; Doc. 9 at 3.) Section 1231(a)(1)(A) establishes that "[e]xcept as otherwise provided in this section," individuals with a final removal order "shall [be] remove[d] ... from the United States within a period of 90 days." During the 90-day removal period, which begins to run on "[t]he date the order of removal becomes administratively final, noncitizens may be detained. 8 U.S.C. §§ 1231(a)(2), 1231(a)(1)(B)(i).

When, as here, the order is entered *in absentia*, 8 C.F.R. § 1241.1(e) states the order becomes administratively final immediately upon entry of the order. But Ninth Circuit case law reflects that the order in fact becomes final upon the earlier of (1) the 180-day period to file a motion to reopen expires, or (2) the BIA affirms the order. *Cui v. Garland*, 13 F.4th 991, 996

(9th Cir. 2021).[2] Here, Petitioner's *in absentia* order of removal was entered on July 6, 2006, and she did not move to reopen within 180 days or by January 2, 2007. Thus, on January 2, 2007, Petitioner's *in absentia* removal order became final, triggering the 90-day removal period, which has long since expired.[3] As such, Petitioner's detention cannot be governed by 8 U.S.C. § 1231(a)(1), (2).

## B.  Detention Authority After the Expiration of the Removal Period

If a noncitizen subject to a final order of removal is not removed within the 90-day removal period, two subsections of § 1231(a) potentially apply. Section 1231(a)(6) provides that noncitizens subject to final removal orders may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in § 1231(a)(3).[4]  Three classes of persons "may be detained beyond the removal period" under § 1231(a)(6): noncitizens who are (1) inadmissible under 8 U.S.C. § 1182, (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community, or to be

---

[2] In their opposition, Respondents argue that pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii), the 90-day removal window does not start when an *in absentia* order becomes final, but rather when "an automatic stay of removal is lifted by the Immigration Court" in the event that Petitioner's motion to reopen is denied. (Doc. 8 at 1-2.) The Court finds this argument unavailing for two reasons. First, §1231(a)(1)(B)(ii) mandates the removal period begins only after a Court of Appeals – not an immigration court – denies the petition and withdraws a stay of removal. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008). Second, such an argument contradicts Respondents' own contentions that Petitioner is being detained under 8 U.S.C. § 1231(a)(6), which governs detention procedures following the expiration of the removal period, not prior to the removal period.

[3] The removal period can be extended in certain circumstances. The statute provides "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien ... conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). However, the Court finds § 1231(a)(1)(C) does not apply here because (1) Respondents do not invoke the tolling provisions under§1231(a)(1)(C) and (2) nothing in the record indicates that Petitioner conspired or acted to prevent her removal subject to an order of removal.

[4] Petitioner argues in the first instance that §1231(a)(3) mandates supervision, not detention pursuant to §1231(a)(6), following the removal period. (Doc. 1 at 12, ¶ 50; Doc. 9 at 5.) Other than the statute itself, Petitioner makes no colorable argument justifying immediate release on an Order of Supervision for a noncitizen who was not in immigration custody immediately following the expiration of the 90-day removal period or had yet to receive an initial custody determination hearing pursuant to 8 C.F.R. § 241.4. Consequently, the Court finds, especially in light of Petitioner's invocation of certain exceptions justifying continued detention pursuant to § 1231(a)(6), that immediate release on the basis of § 1231(a)(3) is not the appropriate remedy in this case.

4

unlikely to comply with the order of removal. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021). § 1231(a)(6); *see also* 8 C.F.R. § 241.4 (setting out requirements for periodic custody reviews after the 90-day removal period has expired).

Respondents maintain that Petitioner is lawfully detained pursuant to § 1231(a)(6) pending adjudication of her motion to reopen. In response, Petitioner argues that her detention pursuant to § 1231(a)(6) violates the government's own regulations, which require Respondents to provide Petitioner notice or opportunity to contest her detention or submit evidence that she does not pose a danger to the community or present a significant flight risk.[5] 8 C.F.R. § 241.4(d)-(f). In making this argument, Petitioner largely relies upon regulations governing the procedures for revoking supervision. (Doc. 1 at 10) (citing 8 C.F.R. §§ 241.4(d)(1)-(2), 13(b)(1).) On this point, the Court finds the reasoning in *Lin v. Francis*, No. 25 CIV. 10001 (PAE), 2025 WL 3751855 (S.D.N.Y. Dec. 29, 2025) to be persuasive:

> [Petitioner] also asserts that ICE's regulations required it to provide notice before detaining him. But these regulations do not apply to [Petitioner], whom ICE had not previously detained and who therefore was not released on supervision. This case is thus far afield from recent ones in which this and other courts have found statutory or regulatory violations where ICE abruptly detained a noncitizen subject to a removal order and who had been released on conditions of supervision with which he or she had complied. In those cases, ICE failed to comply with mandatory procedures imposed by statute and/or regulation, including ones that required giving the noncitizen notice as to the basis for renewed detention and a prompt opportunity to be heard.

*Lin*, 2025 WL 3751855, at *4. (cleaned up). The facts here are analogous to *Lin*. At the time of her apprehension by ICE in June 2026, Petitioner (1) had not appeared at her removal hearing or since, (2) had an administratively final *in absentia* order of removal, (3) was no longer subject to the 90-day removal period, (4) had not filed a motion to reopen or rescind the removal order, and (5) had never been detained by immigration authorities or released on supervision following the issuance of her final removal order. Under these circumstances, the Court finds that 8 U.S.C. § 1231(a)(6) gave ICE statutory authority to detain Petitioner. *See, e.g.*, *Piao v. Lyons*, No. 25 Civ.

---

[5] Respondents do not contest this nor provide any argument or factual proffer regarding any arrests, convictions, risk of flight, or danger to the community. (*See* Doc. 8.)

1725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025) ("[T]he Court concludes, as [have] other courts, that the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the [g]overnment's ability to detain Petitioner [without notice] for the purpose of enforcing that removal order at this time [i.e., years later]").

That does not mean, however, that a final order of removal allows the government to detain an inadmissible noncitizen indefinitely. In *Zadvydas*, the Supreme Court interpreted § 1231(a)(6) to limit post-removal order detention to a period "reasonably necessary to bring about that alien's removal from the United States." *Id*. at 689. The Court found that a post-removal order detention period of six-months was "presumptively reasonable"; however, beyond those six months, if removal no longer is reasonably foreseeable, continued detention becomes unauthorized. *Id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Petitioner has been detained for twenty days. This is well "within the 'presumptively reasonable' six-month period. *See Alfaro Lara v. Warden, California City Correction Ctr.*, No. 1:26-CV-01986-JLT-FJS, 2026 WL 1714007 (E.D. Cal. June 12, 2026). *T*herefore, Petitioner is not entitled to habeas relief at this time.

## V.   CONCLUSION AND ORDER

1.   Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.   Petitioner's Motion for Temporary Restraining Order (Doc. 3) is **DENIED** as moot.

3.   The Clerk of the Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated:   July 2, 2026

_____
UNITED STATES DISTRICT JUDGE